**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 06-cv-00844-REB-BNB

KIM CONNOR ANDREWS,

      Plaintiff,

v.

THE GEO GROUP, INC.,

      Defendant.

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

      This matter is before me on the **Defendant's Motion for Summary Judgment
and Supporting Brief** [#55], filed July 30, 2007.  The plaintiff has filed a response
[#67], filed August 22, 2007, and the defendant has filed a reply [#68], filed September
6, 2007.[1]  I grant the motion.[2]

## I.  JURISDICTION

      I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal
question).

---

[1]  The exhibits attached to the defendant's filings contain letter designations, and the exhibits
attached to the plaintiff's filings contain numerical designations.  I will refer to these exhibits using only
their letter or numerical designation.

[2]  The issues raised by and inherent to the motion for summary judgment are fully briefed,
obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on
the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th
Cir.1988) (holding that the hearing requirement for summary judgment motions is satisfied by court's
review of documents submitted by parties).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 528 U.S. 933 (1999).

## III.  FACTS

The plaintiff, Kim Connor Andrews, is an employee of the defendant, The GEO

Group, Inc.  GEO operates a private detention facility known as the Aurora I.C.E.

Processing Center (Aurora Facility), which detains illegal aliens awaiting administrative

hearings concerning removal and other issues.  Andrews works as a detention officer at

the Aurora Facility.  Andrews alleges that GEO discriminated against her based on her

disability, in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.

§§ 12102 - 12213.  Lupus is Andrews's alleged disability.

A chicken pox outbreak occurred at the Aurora Facility in March of 2004.  E

Dormitory of the Aurora Facility was quarantined on March 8, 2004.  A notice was

posted on the front door of the Aurora Facility to notify all persons entering the building

that there were active cases of chicken pox in the building.  *Exhibit* H.  Andrews saw the

notice on March 13, 2004.  Andrews went to the normal briefing at the beginning of her

shift that day, and she learned also at the briefing about the chicken pox outbreak.

*Exhibit* 1, p. 95.  After the briefing, Andrews asked the supervisor if she could avoid

exposure to the detainees by being assigned the duty of bringing visitors into the

visiting room.   The supervisor agreed to this arrangement.   *Id.*

On the same day, Andrews put a note under the door of Maria Culbertson, a

human resources specialists at the Aurora Facility, asking if the terms of the quarantine

notice applied to Andrews, as an employee.  *Exhibit* I.  The quarantine notice said that

persons taking prednisone and persons with diseases of the blood should not enter the

building.  *Exhibit* H.  Andrews was concerned because she has Lupus, and at the time

she was taking prednisone.  Culbertson discussed Andrews' note with Jerry Alexander,

the Warden of the facility.  *Exhibit* A.  Alexander and Culbertson told Andrews to contact her personal physician to determine if Andrews could work at the Aurora Facility while there were active cases of chicken pox.  *Exhibit* A, ¶ 5.  A short time later, Andrews submitted to GEO a letter from a nurse practitioner stating: "Until further notice, Mrs. Andrews is advised to avoid exposure to chickenpox at her workplace." *Exhibit* A, ¶ 6; *Exhibit* J.  On March 17, 2004, Alexander sent Andrews a letter informing her that she had Andrews been placed on leave under the Family Medical Leave Act (FMLA), based on the letter GEO had received from Andrews' health care provider. *Exhibit* A, ¶¶ 7 - 8.  Andrews was on leave from March 15, 2004, to April 16, 2004.  *Id.*

On March 18, 2004, Andrews' physician determined that there was no contraindication to Andrews' returning to work despite the chicken pox outbreak, and that Andrews should be vaccinated against chicken pox if she was not immune.  *Exhibit* L.  Andrews was advised of these recommendations on March 19, 2004.  *Id.*  On March 26, 2004, Andrews was tested to determine if she is immune to chicken pox, and Andrews was informed that she is immune.  *Exhibit* B, p. 146 - 147; *Exhibit* M. Alexander and Culberston state in their affidavits that, prior to April 16, 2004, Andrews did not tell them about the statement by Andrews' physician that Andrews could return to work, or the test indicating that Andrews was immune from chicken pox.  *Exhibit* A, ¶ 9; *Exhibit* C, ¶ 9. Andrews recalls telling Andrews and Culbertson about the test when she asked them why she was not told about the test earlier, and why she was not permitted to take the test at GEO's workers' compensation medical provider.  *Exhibit* B, p. 148.

Andrews claims that GEO unlawfully discriminated against her based on her disability.   She claims she suffered disparate treatment based on her disability

because she was placed on FMLA leave after the outbreak, while other employees received treatment from workers' compensation medical providers, and other employees received workers' compensation benefits.  She claims also that GEO refused to provide her with a reasonable accommodation for her disability.

## IV.  ANALYSIS

Andrews does not present direct evidence of disability discrimination, so the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), must be applied in an evaluation of the viability of Andrews' ADA claim. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  To establish a prima facie case of disability discrimination, Andrews must show that: (1) she is a disabled person, as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) her employer discriminated against her because of her disability.  *Id*.; *Zwygart v. Board of County Com'rs of Jefferson County, Kan.*, 483 F.3d 1086, 1091 (10th Cir. 2007). Discrimination can take the form of an employer's denial of a reasonable accommodation for the employee's disability, or some form of an adverse employment action that was motivated by the employee's disability.  If Anderws comes forward with evidence sufficient to establish a prima facie case, then the burden shifts to GEO to offer a legitimate, nondiscriminatory reason for its employment decision. *MacKenzie*, 414 F.3d at 1274.  If the defendant establishes a legitimate, nondiscriminatory reason for its employment decision, then the burden shifts to the plaintiff to show that the defendant's stated reason is a pretext for discrimination. *Id*.

It is important to note that not every perceived indignity or inconvenience will rise to the level of an adverse employment action for the purpose of Andrews' ADA claim. Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action. *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006).

The plaintiff argues that her ADA claim has two iterations. *Response*, p. 8. First, she contends that she requested and was denied reasonable accommodation for a known disability. Second, she claims she suffered disparate treatment during the March 12, 2004, chicken pox outbreak because another similarly situated, non-disabled employee was given an accommodation that was not given to Andrews. In addition, Andrews appears to argue that she suffered disparate treatment when she was placed on unpaid FMLA leave during the chicken pox outbreak. Viewing the undisputed facts in the record in the light most favorable to Andrews, these claims fail.

The defendant argues that Andrews has not demonstrated that she suffers from a disability, as that term is defined by the ADA. At minimum, the record shows that there is a substantial question about whether or not Andrews suffers from a disability that is subject to the requirements of the ADA. However, even if I assume Andrews was disabled at the relevant time, I conclude that Andrews' ADA claims fail on more fundamental bases. First, Andrews has not preserved her failure to accommodate claim because she did not file an EEOC charge asserting such a claim. Second, GEO has come forward for legitimate, nondiscriminatory reasons for its treatment of Andrews, which treatment Andrews claims was disparate and motivated by disability

discrimination.  Andrews has not come forward with any evidence that GEO's reasons were a pretext for disability discrimination.  For the purpose of my analysis of the defendant's motion for summary judgment, I assume, without deciding, that Andrews has shown that she suffers from a disability.

A.  REQUEST FOR ACCOMMODATION

In her response, Andrews claims that she was denied the reasonable accommodation of having detainees brought to the visitation area during the chicken pox outbreak so she could avoid exposure to chicken pox.  *Response*, p. 17.  Andrews may not assert such a claim in this case because she did not exhaust her administrative remedies on such a claim.

In ***National R.R. Passenger Corp. v. Morgan***, the United States Supreme Court held that a plaintiff may not pursue a civil action based on a discrete act of employment discrimination unless a timely charge of discrimination asserting that discrete act of discrimination has been filed.  536 U.S. 101, 113 (2002).

> Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.

***Id***.

> (U)nexhausted claims involving discrete employment actions are no longer viable.  ***Morgan*** abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes is own unlawful employment practice for which administrative remedies must be exhausted.  Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.

***Martinez v. Potter***, 347 F.3d 1208, 1210 (10th Cir. 2003).

Andrews' EEOC charge says nothing about a request for an accommodation of her alleged disability, or the denial of such an accommodation.  *Complaint* [#3], filed May 3, 2006, attachment (Charge of Discrimination).  The time for filing such a charge is long expired.  Therefore, Andrews may not assert her failure to accommodate claim in this case, and the defendant is entitled to summary judgment on this claim.

### B.  DISPARATE TREATMENT

In her EEOC charge, Andrews cited disparate treatment as the basis of her charge.  She alleged:

> 1) I was notified on March 8, 2004 that the Respondent discovered active cases of Chickenpox at the facility and the building was quarantined.  2) Because of my disability, lupus and the medications I take, my having been exposed to Chikenpox made it necessary for me to remain off work until the quarantine was lifted.  I was placed on leave without pay. 3) Co-workers, Celia Ramirez and Mr. Walters, received workers' compensation and were taken to Concerntra right away.  I was not given those benefits. 4) I believe I was treated disparately because of my disability.

*Complaint* [#3], filed May 3, 2006, attachment (Charge of Discrimination).

In her response to GEO's motion for summary judgment, the plaintiff does not mention the treatment of Celia Ramirez or Mr. Walters as bases for her disparate treatment claim.  Rather, she argues in her response that she can establish disparate treatment based on the treatment received by GEO employee Dawn Ceja during the chicken pox outbreak.  At the time of the 2004 chicken pox outbreak, Ceja was the Chief of Security, and ranked below only the warden and two assistant wardens at the Aurora Facility.  During the quarantine, Ceja moved her office from the secure area of the facility, where she was subject to contact from detainees, to the administrative section of the facility, where she was not subject to such contact.  Ceja's job was not

modified, but the location of her office was modified.  Exhibit T, p. 51.

 "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted [by the plaintiff] to the EEOC."  *MacKenzie*, 414 F.3d at 1274.  Andrews specified two specific comparators, Celia Ramirez and Mr. Walters, in her EEOC charge.  Nothing in the record indicates that the EEOC administrative investigation resulting from Andrews' EEOC charge reasonably could be expected to include the treatment of Dawn Ceja.  To the extent Andrews bases her disparate treatment claim on the treatment of Dawn Ceja, Andrews' claim is subject to dismissal for failure to exhaust her administrative remedies.  *National R.R. Passenger Corp. v. Morgan*,  536 U.S. 101, 113 (2002).

Even if the treatment of Ceja properly may be considered, the treatment of Ceja does not support Andrews' disparate treatment claim.  To establish a disparate treatment claim, Andrews must show, *inter alia*, that she was treated differently from other similarly-situated, nonprotected employees.

> An employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline.  A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated.

*Kendrick v. Penske Transp. Services, Inc*.,  220 F.3d 1220, 1232 (10th Cir. 2000) (internal quotation and citations omitted). Andrews' job duties required contact with detainees. *Exhibit* U (Andrews Deposition), pp. 74 - 75.  The undisputed facts in the record show that Ceja's job did not require contact with detainees because her office could be moved to the administrative section of the facility without changing her job

duties.  Exhibit T, p. 51.  Ceja was the Chief of Security, and ranked below only the warden and two assistant wardens at the Aurora Facility.  Andrews was a detention officer.  The undisputed facts in the record show that Ceja is not a similarly-situated employee whose treatment may be considered in support of Andrews' disparate treatment claim.

As noted above, Andrews alleged in her EEOC charge that fellow employees Celia Ramirez and Mr. Walters received workers' compensation and were taken to a workers' compensation doctor, while Andrews was not given such benefits.  This is the only disparate treatment specified in Andrews' EEOC charge.  Under Colorado law, an employee cannot receive workers' compensation benefits unless, "at the time of the injury, the employee is performing service arising out of and in the course of the employee's employment," and "where the injury . . . is proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment . . . ."  §8-41-301(1)(b) - (c), C.R.S.  It is undisputed that Ramirez and Walters, both of whom were detention officers, had expressed concern that they had been exposed to chicken pox while at work, or were experiencing symptoms consistent with chicken pox around the time of the quarantine.  *Motion for summary judgment*, p. 7, ¶ 20 (including cited exhibits).  Because these employees were exposed at work, GEO sent them to a workers' compensation medical provider.  *Id*.

Andrews, in contrast, did not report to GEO any symptoms of chicken pox, express any concern that she may have contracted chicken pox, request that she be tested for chicken pox, ask if she could see a workers' compensation physician, or ask if she could file a workers' compensation claim.  *Id.*, ¶ 15 (including cited exhibits).

Andrews was not exposed to chicken pox while at work, while the comparators she cites were exposed at work.  This is a legitimate, non-discriminatory reason for the different treatment received Andrews with regard to evaluation by a workers' compensation physician, and receipt of workers' compensation benefits.  Under Colorado law, Andrews was not entitled to workers' compensation benefits.  Andrews has not cited any evidence to indicate that GEO's stated reason for this different treatment was a pretext for disability discrimination.

### C.  FMLA LEAVE AS ADVERSE EMPLOYMENT ACTION

Andrews argues also that she was denied work for about one month when she was placed on FMLA leave from March 15, 2004, to April 16, 2004.  She alleges that she was placed on FMLA leave involuntarily, without pay, and that this action by GEO constitutes an adverse employment action, and that this action was taken based on her disability.  Suspension without pay readily can be viewed as an adverse employment action because such a suspension causes a significant change in benefits.  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006).  However, Andrews' ADA claim based on her FMLA leave fails because GEO has cited a legitimate nondiscriminatory reason for Andrews' placement on FMLA leave, and Andrews has not come forward with any evidence that this reason is a pretext for discrimination.

GEO notes that after she saw the quarantine notice, Andrews expressed concern about working in the GEO facility.  After talking to GEO managers, Andrews consulted with her physician, and a short time later GEO received a letter from Andrews' health care provider stating: "Until further notice, Mrs. Andrews is advised to

avoid exposure to chickenpox at her workplace." *Exhibit* A, ¶ 6; *Exhibit* J.  It is undisputed that Andrews' duties as a detention officer involved contact with detainees. *Exhibit* U (Andrews Deposition), pp. 74 - 75.  As discussed above, at the time of the quarantine notice and GEO's letter to Andrews stating that Andrews was on FMLA leave, there was no indication that Andrews had been exposed to chicken pox at GEO, or that Andrews was suffering from chicken pox.  Under Colorado law, Andrews was not entitled to workers' compensation benefits.  §8-41-301(1)(b) - (c), C.R.S.  This left GEO with two choices: 1) require Andrews to continue working, and risk exposure to chicken pox, contrary to the direction of Andrews' health care provider; or 2) place Andrews' on FMLA leave.  Under these circumstances, placing Andrews on leave, based on the recommendation of Andrews' health care provider, is a legitimate, non-discriminatory reason for GEO's action.  Andrews has not come forward with any evidence which supports her contention that this reason was a pretext for discrimination.

### D.  CONCLUSION

Viewing the undisputed facts in the record in the light most favorable to Andrews, no reasonable finder of fact could conclude that Andrews has established her claim of disability discrimination under the ADA.  Andrews did not exhaust her administrative remedies on her claim that GEO failed to provide her with a reasonable accommodation of her disability.  Further, GEO has cited legitimate, non-discriminatory reasons for its treatment of Andrews during the chicken pox outbreak, and Andrews has not come forward with any evidence that would support her contention that these reasons were a pretext for discrimination.

### V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That  the **Defendant's Motion for Summary Judgment and Supporting Brief** [#55], filed July 30, 2007, is **GRANTED**;

2.  That judgment **SHALL ENTER** in favor of the defendant, The GEO Group, Inc., and against the plaintiff, Kim Connor Andrews;

3.  That the plaintiff's' claim of disability discrimination in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12102 - 12213, is **DISMISSED WITH PREJUDICE**;

4.  That the Trial Preparation Conference set for October 19, 2007, at 10:00 a.m., and the trial scheduled to commence on Monday, October 22, 2007, are **VACATED**;

5.  That the defendant is **AWARDED** its costs to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR. 54.1.

Dated October 18, 2007, at Denver, Colorado.

**BY THE COURT:**

s/ Robert E. Blackburn
**Robert E. Blackburn**
**United States District Judge**