FILED
United States Court of Appeals
Tenth Circuit

August 5, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KIM CONNOR ANDREWS,

    Plaintiff-Appellant,

v.

GEO GROUP, INC.,

    Defendant-Appellee.

No. 07-1483
(D.C. No. 1:06-cv-00844-REB-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

---

Plaintiff Kim Connor Andrews appeals from the district court's order for summary judgment in favor of defendant GEO Group, Inc. (GEO), on her claim of discrimination in violation of the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12102-12213. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

GEO operates a private detention facility in Aurora, Colorado, which houses illegal aliens. Ms. Andrews works as a detention officer, whose duties include escorting detainees to the visiting room. When she arrived at work on Saturday, March 13, 2004, Ms. Andrews saw a notice on the front door that there were active cases of chicken pox and warning visitors "with diseases of the blood, cancer, other chronic diseases or [who] are taking prednisone or other steroids," Aplt. App., Vol. I at 117, not to enter the facility. The outbreak was also discussed at a pre-work briefing that same day. Following the briefing, she asked her supervisor if she could avoid exposure to the chicken pox by bringing visitors to the visiting room instead of bringing the detainees to the visiting room. The supervisor agreed.

Later that same day, Ms. Andrews put a note under the door of a human resources employee, which asked whether the restrictions applied only to visitors, "or also to officers working here." *Id*. at 118. Ms. Andrews was concerned because she was taking prednisone for lupus. The specialist discovered the note when she came to work on Monday, March 15, and discussed it with the warden. She then called Ms. Andrews and told her to consult her personal physician about whether she should come to work. A letter dated March 16 from a nurse practitioner stated that "[u]ntil further notice, Mrs. Andrews is advised to avoid exposure to chickenpox at her workplace." *Id*. at 119. GEO wrote to Ms. Connor

on March 17 explaining that she was being placed on unpaid leave under the Family Medical Leave Act until the quarantine was lifted and advising her about short-term disability benefits. Ms. Andrews returned to work on April 16.[1]

On September 10, 2004, Ms. Andrews filed a charge of discrimination with the Colorado Civil Rights Division (CCRD) and Equal Employment Opportunity Commission (EEOC), in which she alleged that GEO "failed to accommodate [her] disability." *Id*. at 18. She described the claim as follows:

> I believe I was unlawfully discriminated against because [] of my disability in violation of Colorado's anti-discrimination laws and the Americans [W]ith Disabilities Act (ADA).  1) I was notified on March 8, 2004 that [GEO] discovered active cases of [c]hickenpox at the facility and the building was quarantined.  2) Because of my disability, lupus, and the medications I take, my having been exposed to [c]hickenpox made it necessary for me to remain off work until the quarantine was lifted.  I was placed on leave without pay.
> 3) *Co-workers Celia Ramirez and Mr. Walters* [] *received worker's compensation and were taken to Concentra right away. I was not given those benefits*.  4) *I believe I was treated disparately because of my disability*.

*Id*. (emphasis added).

The EEOC "adopted the findings of the [CCRD] . . . [,which] investigated [the] charge," *id*. at 19, and dismissed the charge. Ms. Andrews then filed a pro se complaint in which she alleged violations of Title VII, 42 U.S.C.

---

[1]  Unknown to GEO, Ms. Andrews's physician advised her on March 18, 2004, that she could return to work and recommended that she be vaccinated against chicken pox if she was not immune. Also unknown to GEO was that Ms. Andrews was tested on March 26 and advised she was immune.

-3-

§ 2000e-5. The form complaint contains a section titled "Nature Of The Case." Aplt. App., Vol. I at 13. In responding to how GEO allegedly discriminated against her, she checked the boxes "Race [,] Color[,] Sex[,]" and in "Other," wrote "ADA." *Id.* As to how the discrimination occurred, she checked the box "Demotion[,]" and in "Other," wrote "[p]ermanent [p]osition applied for taken away." *Id.* The complaint describes her first claim as "failure to accomodate (sic) medical,"[2] *id.* at 14, her second claim as "my position taken away after filing first CRD complaint[,] retaliation[,]" and "harassment[,]" *id.* at 15, and her third claim as "monetary payment for taking my permanent position[,]" and "harassment." *Id.* at 16. Instead of setting forth the factual basis for her claims, she exercised the option to attach a copy of her filing with the EEOC. As relief, she asked to be paid for her medical expenses, loss of time, and harassment.

GEO moved to dismiss the complaint on jurisdictional grounds arguing that Ms. Andrews failed to exhaust her administrative remedies concerning her Title VII or retaliation claims. It also argued that she failed to plead a prima facie case of discrimination under the ADA. The magistrate judge recommended dismissal of her Title VII and retaliation claims, but denied the motion as to the ADA claim. The district court adopted the recommendation.

---

[2] As in her CCRD/EEOC charge, Ms. Andrews titled this claim as an alleged failure to accommodate her medical condition.

Following discovery, GEO moved for summary judgment on Ms. Andrews's ADA claim. In response, Ms. Andrews, now represented by counsel, argued that her ADA claim had two components. First, she argued that her disparate treatment claim was not based on what occurred with Ms. Ramirez and Mr. Walters, but the treatment received by Dawn Ceja, GEO's chief of security, whose work station was changed during the quarantine. Second, she argued that she requested and was denied a job modification, more specifically, she was denied the "reasonable accommodation of having detainees brought to the visitation area so that she could avoid any exposure to the chicken pox." Aplt. App., Vol. I at 147. The district court granted GEO's motion and this appeal followed.

II

"We review a grant of summary judgment *de novo*, taking the facts and the reasonable inferences to be drawn from them in the light most favorable to the nonmoving party." *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1085 (10th Cir. 2008) (internal quotation marks omitted). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id*. "The movant bears the initial burden of presenting evidence to show the absence of a genuine issue of material

fact; if this burden is met, it then becomes the responsibility of the non-moving party to set forth specific facts showing there is a genuine issue for trial." *Justice*, 527 F.3d at 1085 (internal quotation marks omitted).

### III

"[T]he ADA requires a plaintiff to exhaust her administrative remedies before filing suit." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007). In this circuit, "exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Id*. There are two steps to determine whether a plaintiff has exhausted her administrative remedies – "[t]he first step . . . is the filing of a charge of discrimination with the EEOC," *id.*, and the second step "is to determine the scope of the allegations raised in the EEOC charge." *Id*. at 1186. "[B]ecause a plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC[,] . . . [t]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]" *Id*. (internal quotation marks omitted).

Admittedly, the CCRD investigated Ms. Andrews' claim of a failure to accommodate, Aplt. App., Vol. II at 227-31; however, the scope of its investigation included only the accommodations provided to Ms. Ramirez and

Mr. Walters (workers' compensation treatment and benefits).[3]  Understandably, there was no investigation of a claim concerning a job modification because the filing is devoid of any facts concerning such a request.  Thus, Ms. Andrews failed to exhaust her administrative remedies.[4]

      We also hold that Ms. Andrews failed to exhaust her administrative remedies as to her claim for disparate treatment.  In her charge filed with the CCRD/EEOC, her complaint, and throughout discovery, Ms. Andrews theory of recovery concerned the workers' compensation treatment and/or benefits received by co-workers Ms. Ramirez and Mr. Walters.  When it came time to respond to GEO's motion for summary judgment, however, Ms. Andrews never mentioned workers' compensation, Ms. Ramirez, or Mr. Walters.  Instead, she advanced a

---

[3]     The report states, in relevant part:  "Because Officer Ramirez notified [GEO] that she was uncertain if she had ever contracted Chicken pox, she was ordered to undergo a Titer test under Workers' Compensation and was allowed to stay home, pending the outcome of the test.  After taking the test, it was discovered that Ramirez tested 'negative' for Chicken pox and was thus able to return to work.  Officer Walters notified [GEO] that he might have contracted Chicken pox.  It was confirmed through the Workers' Compensation office that he tested 'positive' for Chicken pox and therefore, he was eligible for Workers' Compensation benefits."  Aplt. App., Vol. II at 229.

[4]     Ms. Andrews posits that GEO is precluded by the firm waiver rule from arguing that she failed to exhaust her administrative remedies with respect to her job modification claim.  This issue was not before the magistrate judge on GEO's motion to dismiss.  Moreover, because exhaustion of remedies is a jurisdictional prerequisite to filing an ADA suit, *Jones,* 502 F.3d at at 1183, GEO "may raise [the] court's lack of subject-matter jurisdiction at any time in the same civil action – even on appeal[.]"  *Mires v. United States*, 466 F.3d 1208, 1211 (10th Cir. 2006) (internal quotation marks omitted).

new theory of recovery, arguing that GEO allowed Ms. Ceja to move her desk during the quarantine to avoid exposure to chicken pox. On appeal, Ms. Andrews does not mention the treatment received by Ms. Ramirez or Mr. Walters as a basis for her disparate treatment claim, but cites facts concerning Ms. Ceja only.

The district court correctly found that "[Ms.] Andrews specified two specific comparators, Celia Ramirez and Mr. Walters, in her EEOC charge." Aplt. App., Vol. II at 247. As such, "[n]othing in the record indicates that the EEOC administrative investigation resulting from [the] charge reasonably could be expected to include the treatment of Dawn Ceja." Jones, 502 F.3d at 1186 (internal quotation marks omitted) Again, Ms. Andrews failed to exhaust her administrative remedies.

The judgment of the district court is AFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge